# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| SHANNON W. ALVAREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:18-CV-013-PPS/MGG |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Shannon Alvarez appeals the Social Security Administration's decision to deny her application for Disability Insurance Benefits and her application for supplemental security income, both applications alleging disability beginning January 10, 2014. Alvarez alleges disability stemming from a chiara malformation in her brain which caused severe headaches. Although she had a decompression surgery and a shunt placed in her brain, Alvarez continued to suffer from frequent migraine headaches. [Tr. 250-61.][1] An administrative law judge ruled Alvarez was not disabled within the meaning of the Social Security Act and that she had the residual functional capacity (RFC) to perform medium work with certain additional limitations.

Alvarez challenges the ALJ's decision on three grounds but I only need to discuss one of them. Alvarez is on oxygen for severe her headaches. This means that

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 12.

when she leaves the house, she must either navigate the world with an oxygen tank or make plans to have oxygen otherwise available to her at her destination. The problem is that in formulating an RFC for Alvarez, the ALJ failed to assess her need for an oxygen tank during the workday and any time off task which might result from that fact. A remand is therefore necessary so that the ALJ can alter the RFC to take into account Alvarez's oxygen needs.

## Factual Background

The ALJ found that Alvarez had the severe impairments of: chiara malformation and pseudo tumor cerebri causing headaches, fatigue, numbness in the extremities, and seizures as well as obesity. [Tr. 12.] Aside from these severe impairments, Alvarez had several other medical challenges, as well as non-medically determinable impairments including a foot injury, knee injury, irritable bowel syndrome, depression, anxiety, bipolar disorder, and fibromyalgia, which are fully recounted in the ALJ's opinion and need not be repeated here. [*See* Tr. 12-13.]

Of particular importance to the issue at hand, Plaintiff's treating neurologist, Dr. Keven Kristl, prescribed oxygen treatment to Alvarez for her severe headaches. [Tr. 1320, 1501-02.] Alvarez testified during the hearing that she saw an improvement in her symptoms after she took the prescribed oxygen. [Tr. 58.] Sometimes when she takes oxygen, she feels better, then over exerts herself, and then needs to lay back down, take the oxygen, and take her medicine. [*Id.*] Alvarez does not usually take the oxygen with her "because [she] ha[s] a big tank that fits in [her] house, or [her] room, and [she] ha[s]

three other tanks, but it's very hard to travel with it." [Tr. 58-59.] Alvarez also testified that she uses oxygen daily - depending on how bad her headaches are, some days she can use it three times a day, some days seven times per day. [Tr. 95.]

## Discussion

Before diving into the issue raised by Alvarez, I'll start with a review of the legal framework. I am not supposed to determine from scratch whether or not Alvarez is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not a particularly rigorous one. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there certainly has to be more than a "scintilla" of evidence. *Id.* So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Alvarez contends that in formulating her RFC, the ALJ erred by not addressing any need for an oxygen tank during the day, or any resulting time off during the day that her oxygen treatments would require. The Commissioner responds that, "[t]he ALJ could and perhaps should have made an explicit finding on this point, but any error by the ALJ in this regard would not be grounds for remand." [DE 18 at 3.] While I agree that the ALJ should have made a finding regarding Alvarez's need for oxygen at work, I am not in a position to know whether the need for an oxygen tank makes a difference in her ability to work. Therefore, the oversight was not a harmless error.

In this case, the ALJ determined that Alvarez had the RFC to perform medium work, with some limitations like carrying and lifting only certain weights, not being exposed to workplace hazards such as machinery and unprotected heights, and being limited to simple, but not detailed instructions and performing simple, routine tasks, but not always at a production rate pace. [Tr. 15-16.] In response to questions posed by the ALJ, the VE testified that Alvarez would be able to perform medium jobs such as laundry laborer, industrial cleaner, and auto detailer. [Tr. 22, 87-88.] The ALJ adopted this, and found that Alvarez would be able to perform the requirements of a laundry laborer (DOT #361.687-018) (unskilled, SVP2), industrial cleaner (DOT #381.687-018) (unskilled, SVP2), and auto detailer (DOT #915.687-034) (unskilled, SVP2). [Tr. 22.]

The RFC is "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). "[B]oth the

4

hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The RFC determination must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled. *Zblewski v. Astrue*, 302 F. App'x 488, 492 (7th Cir. 2008); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "[A]lthough the ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). "A decision that lacks adequate discussion of the issues will be remanded." *Id.* at 1121.

As noted above, in this case, Plaintiff's treating neurologist, Dr. Keven Kristl, prescribed oxygen treatment to Alvarez for her severe headaches. [Tr. 1320, 1501-02.] This helps mute pain from the headaches. [Tr. 58.] According to Alvarez, she usually does not take the oxygen with her "because [she] ha[s] a big tank that fits in [her] house, or [her] room, and [she] ha[s] three other tanks, but it's very hard to travel with it." [Tr. 58-59.] During the administrative hearing, Alvarez's counsel argued that "if she did work, she would have to have oxygen onsite." [Tr. 46.]

Alvarez also testified that she uses oxygen daily - depending on how bad her headaches are, some days she can use it three times a day, some days seven times per day. [Tr. 95.] The medical record indicates that the oxygen treatment was prescribed

5

once-twice per day. [Tr. 1320, 1468.] According to Alvarez, Dr. Kristl told her to lay down when doing the oxygen treatment, and it takes about 15 minutes. [Tr. 95-96.] Dr. Kristl noted in his records that lying in a dark room makes Alvarez's headaches better. [Tr. 1501.] Alvarez claims if she didn't take the oxygen, it would be "awful" and she would be in the emergency room more. [Tr. 59.]

The ALJ acknowledged in her opinion that Alvarez has "migraines of sufficient severity that she has gone to the emergency room several times." [Tr. 17.] The ALJ also noted that Alvarez reported that the oxygen really helps her severe headaches and Alvarez stopped going to the emergency room since she received oxygen for home use. [Tr. 17, 18, 1320.] However, in assessing the RFC and presenting hypothetical questions to the VE, the ALJ did not account for the presence of the oxygen tank in the workplace, or analyze how much time off task during the day Alvarez would need to do the treatments. [Tr. 15-21, 85-89.] It is perplexing to me that the ALJ largely credits the oxygen treatments for providing relief for Alvarez's migraine headaches, but then completely fails to evaluate how these treatments might affect her ability to maintain employment.

Hauling around oxygen, or arranging that it be available wherever one expects to be, is no easy task. As the court in *NeMun v. Astrue*, No. 10-C-175, 2011 WL 1113359, at *4 (E.D. Wis. Mar. 24, 2011), recognized, "oxygen is not a simple pill that one can ingest - it is a cumbersome and time-consuming procedure." Because the ALJ did not

6

analyze whether Alvarez: (1) would need an oxygen tank at work; (2) how often Alvarez would need oxygen treatments at work; and (3) how much time off task the treatments would take, I cannot say the ALJ provided meaningful review of this issue or a logical bridge between the evidence and her conclusions.

In response, the Commissioner contends the ALJ omitted this analysis because "Plaintiff would not be expected to have her oxygen tank with her in the workplace" [DE 18 at 3 n.2], and then cites Alvarez's own testimony that she does oxygen treatments at home because there is "a big tank that fits in [her] house . . . but it's very hard to travel with it." [Tr. 58-59.] The Commissioner's argument is off target. Just because Alvarez, a person who is admittedly unemployed and claiming disability, currently does her oxygen treatments (involving a heavy tank) at home, has no bearing whatsoever on whether Alvarez would need to do these treatments at a work site. If anything, this testimony favors Alvarez by suggesting the difficulty of doing oxygen treatments at work.

The Commissioner claims that any error in not considering Alvarez's limitations due to the oxygen treatments is harmless. But this is directly contradicted by the VE's testimony. Alvarez's counsel asked the VE if having an oxygen tank at work would preclude the medium job examples he provided for Alvarez (working as a laundry laborer, industrial cleaner, or auto detailer), and the VE responded, "[y]ou really could not do that, I think, . . . that would be quite incompatible." [Tr. 90-91.] In other words,

7

the VE maintains Alvarez would not be able to do any of the three potential jobs listed in the ALJ's decision if she required oxygen treatments at work. Additionally, the VE testified it was his opinion that "if one was off task for any reason, anything more than 10% of their workday, their work hour, they could not work a competitive job." [Tr. 91.]

In sum, remand is necessary so the ALJ may either sufficiently account for Alvarez's limitations relating to her required oxygen treatments, or put forth some logical and accurate explanation of why Alvarez would not require these treatments during the workday in order to treat her migraine headaches. *See Patterson v. Berryhill*, No. 1:16-cv-558-JMS-DML, 2017 WL 2870852, at *5 (S.D. Ind. June 15, 2017) (remanding, reasoning that "because the ALJ did not analyze [plaintiff's] oxygen use in his RFC analysis, there was no consideration of the potential impact of [plaintiff's] oxygen use and of the VE's testimony regarding the presence of an oxygen tank on the availability of jobs in the national economy at all.").

\* \* \*

Because I am remanding this case for the reasons stated above, I need not discuss the remaining two issues raised by Alvarez — that the ALJ did not account for her limitations in concentration; and that the ALJ erred by not considering whether her migraine-related impairments medically equaled Listing 11.02(A). Alvarez can raise those issues directly with the ALJ on remand.

**Conclusion**

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED: February 14, 2019.

                                         /s/   Philip P. Simon
                                         PHILIP P. SIMON, JUDGE
                                         UNITED STATES DISTRICT COURT